IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **LUIS RIVERA OTERO** | **CIVIL NO. 15-** |
| **Vs.** | |
| **AMGEN MANUFACTURING, LTD** | **JURY BY TRIAL DEMANDED** |

### COMPLAINT

**TO THE HONARABLE COURT:**

NOW COMES the plaintiff, Luis Rivera Otero, through the undersigned attorney, and respectfully alleges and prays as follows:

### I. NATURE OF ACTION

1. This is an action for damages and declaratory and equitable relief for discrimination because of physical disability, retaliation of intentional inflictions of emotional distress, whistle blowing brought by Plaintiff against AMGEN MANUFACTURING LTD., P. O. BOX 4060, Juncos, PR 00777, (787) 656-2000 The plaintiff, Luis Rivera Otero, asserts that he has been subject of discrimination and humiliation by defendant.

2. Plaintiff invokes both federal and Puerto Rico Law, requests compensation for his sufferings, as well as back pay, a doubling of his damages pursuant to Puerto Rico Law, Punitive damages, attorneys' fees, applicable interest and any other relief afforded by the law.

## II. JURISDICTION AND VENUE

3. The jurisdiction of this court is invoked pursuant to 28 U.S.C § 1331, as this claim arises under Title VII of the 1964 Civil Rights Act, 42 U.S.C §e et seq, and 42 U.S.C which prohibits discrimination in the workplace, retaliation for opposing and complaining about discriminatory practices, as well as The Age Discrimination in Employment Act (ADEA), 29 U.S.C §621 et seq, which prohibits discrimination in employment and retaliation and also **Titles I and V and VII of the Americans with Disabilities Act of 1990 (ADA)** 42 U.S.C §12101 et seq, which prohibits discrimination against employees with physical disabilities.

4. Disability discrimination occurs when an employer or other entity covered by the Americans with Disabilities Act, as amended, or the Rehabilitation Act, as amended, treats a qualified individual with a disability who is an employee or applicant unfavourably because she/he has a disability.

5. Harassment is a form of employment discrimination and retaliation that violates Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, (ADEA), Rehabilitation Act, 1802 - 1803, First Amendment to U.S. Constitution and the Americans with Disabilities Act of 1990, (ADA).

6. All of the laws the EEOC enforces make it illegal to fire, demote, harass, or otherwise "retaliate" against people (applicants or employees) because they filed a charge of discrimination, because they complained to their employer or other covered entity about discrimination on the job, or because they participated in an employment discrimination proceeding

7. There is supplemental jurisdiction to hear the claims arising under the laws of Puerto Rico, which arise under the same nucleus of operative facts, and supplemental jurisdiction to

2

hear claims against the individual defendants, pursuant to 28 U.S.C § 1367, 1802-1803 CCP.R., Law 80, 29 Art. 5, 29 L.P.R.A. 185 and Law 115, December 20, 1991.

8. This is the proper venue to bring this action since the facts relating to the cause of action arose in this district.

### III. PARTIES

9. Plaintiff I Mr. Luis E. Rivera Otero's contact information is: P. O. Box 214, Barceloneta, PR 00617; (787) 585-2077; Mr. Rivera obtained on 2007 a Bachelors Degree in Industrial Biotechnology from Interamerican University in Arecibo.

10. AMGEN MANUFACTURING LTD., P. O. BOX 4060, Juncos, PR 00777, (787) 656-2000 employed Mr. Luis E. Rivera Otero on April 2011. AMGEN manufactures pharmaceutical products. Mr. Rivera was employed as a Manufacturing Associate for Amgen's third shift, from 9:00 p.m. until 5:30 a.m., Monday through Friday (Staff ID No. 113204). During the process of his hiring, Mr. Rivera informed Amgen's personnel that he has a Diabetes condition since he was nine years old, which requires him to monitor his blood sugar regularly.

### IV. STATEMENT OF FACTS

11. AMGEN MANUFACTURING LTD., P. O. BOX 4060, Juncos, Puerto Rico 00777, (787) 656-2000 employed Mr. Luis E. Rivera Otero on April 2011. AMGEN manufactures pharmaceutical products. Mr. Rivera was employed as a Manufacturing Associate for Amgen's third shift, from 9:00 p.m. until 5:30 a.m., Monday through Friday (Staff ID No. 113204). During the process of his hiring, Mr. Rivera informed Amgen's personnel that he has a Diabetes condition since he was nine years old, which requires him to monitor his blood sugar regularly.

12. On March 2012 he received his first annual performance evaluation by his then supervisor, Aileen Fernández. The results of such evaluation were excellent and described him

as a great co-worker, knowledgeable in his field, collaborating employee, responsible and trustworthy.

13. On May 2012, without consulting Mr. Rivera, he was transferred to the second shift, i.e., from 2:00 p.m. until 9:30 p.m., under the supervision of Ms. Omayra Baéz. When Mr. Rivera learned about this change in his shift, and anticipating the impact this sudden change in his working hours may have on his health condition, he requested the Area Manager, Mr. Juan Agosto, to allow him to stay in the third shift. Mr. Rivera was told he may go back to the third shift if he finds an associate willing to trade shifts with him. He informs management that associate Yamilka Cruz is pregnant and would accept a change from the third shift to the second shift. Management informs Mr. Rivera that the exchange could be done by next month, therefore subjecting plaintiff of intentional infliction of emotional distress pain undue hardships and duress.

14. From June through September 2012, the changes in rest and lunch hours started to cause unstable levels of blood sugar in Mr. Rivera, causing him numerous episodes of low and/or high blood sugar levels in his blood. On various occasions, Mr. Rivera voluntarily visited Amgen's dispensary clinic to get his blood sugar checked. Mr. Rivera also had to visit his primary doctor for his Diabetes treatment. The requested exchange of shifts did not take place until October of 2012, this time under the direct supervision of Mr. José Díaz Hernández, further extending intentional infliction of emotional distress pain duress and undue hardship.

15. Due to defendant behavior, during all this time, since events started plaintiff had been in fear of death. Continuously he fears for his life, due to defendant actions.

16. On March 2013, plaintiff received his second annual performance evaluation. This time, because he used his sick leave to attend to his medical appointments for his uncontrolled

blood sugar levels, his evaluation reflects this absenteeism. Mr. Rivera informed his manager, Mr. Juan Agosto, that his absenteeism is justified by his health condition which he was trying to get in control after the change in shifts, and of which he informed management since he was employed. Mr. Rivera also stated that it was not fair to penalize him with the loss of his annual productivity bonus and the company's stock.

17. Finally, he was sent to a conduct modification program even though the rest of his performance evaluation was excellent. Mr. Rivera asks the Human Resources office for a meeting regarding this evaluation, where Ms. Yolanda Ortíz tells him that his condition did not require special considerations or reasonable accommodations.

18. From May through August 2013 management informed that overtime was as stated by him now required due to problems with the shift itineraries. Mr. Rivera's supervisors inform all employees that it is mandatory to assist the company's manufacturing operations with their overtime schedule as required. At this time, personnel is reduced and relocated to different areas of the company, which means more duties are assigned to the remaining personnel in the aseptic operations area, where Mr. Rivera works.

19. On August 2013 Mr. Rivera got his mid-year performance evaluation by his supervisor, Mr. José Díaz Hernández. Such evaluation is of excellence and makes him pass his probation period. Mr. Jose Diaz congratulates Mr. Rivera on his outstanding performance on the Aseptic Room Operations certification, which Mr. Rivera completed in record time, under the tuition of Amelio La Vienna, Manufacturing Operations Specialist.

20. On September 2013 Amgen's management calls for an "All Staff Meeting", which was held at Las Piedras, Puerto Rico. Amongst the topics discussed was a new project to be done on AML-1. At this meeting, Mr. Rivera stated his concern for the lack of personnel and

overtime, which has taken its toll on him and his area associates. Mr. Rivera questioned management if this was taken into consideration while planning this new project. His concerned caused visible annoyance and discomfort amongst his immediate management and supervisors, even though his question was praised by the Director, Joe Newell, who stated he would like to meet with Mr. Rivera later on to keep discussing his concern.

21. Added to the discrimination and retaliation because of disabilities and claims, defendant also incurred in discrimination for exercising for First Amendment Right and because of Plaintiff being whistleblower in regard to violation of law and working conditions affect other employees.

22. On October 4, 2013, Mr. Rivera's supervisor, Mr. Jose Diaz Hernandez hands him a Memorandum in which he accuses Mr. Rivera of not complying with company policies. Specifically, he questions the occasions in which Mr. Rivera has visited the company's dispensary clinic because of his health condition, and implies that Mr. Rivera asks the clinic's personnel to send him home to rest even though his condition does not requires it, and/or even though his health condition is stable. When Mr. Rivera reads this Memorandum, he replies to his supervisor that the dispensary clinic cannot dismiss his nor send him home simply because he asks them to, unless there is a valid reason which prevents him to continue working. Mr. Rivera also states to his supervisor that his blood sugar cannot be treated unless insulin is injected, and that the company's dispensary clinic does not have available nor provides this medication, service or treatment.

23. Therefore, it is not possible to state that when Mr. Rivera had uncontrolled episodes of high blood glucose levels, the dispensary clinic was able to stabilize him. The Memorandum handed to Mr. Rivera had false statements and incomplete information. Mr. Rivera asked for

copies of his medical files, including blood glucose level and blood pressure level readings, documented with each visit to the company's dispensary, along with the medical staff's observations and recommendations on each of the occasions mentioned in the memo. This with the intention to clarify and correct what was written on the aforementioned memo.

24. The company did not provide this information on grounds that such information (referring to the medical reports from the dispensary that included Mr. Rivera's own blood glucose levels and blood pressure levels) was written on company paper and thus company property.

25. On October 16, 2013, at 2:30 a.m., Mr. Rivera visits the clinic since he was not feeling well. After examination, the paramedic recommends he retire from the work area. When this is informed to his supervisor, Mr. Jose Diaz Hernandez, he proceeds to inquire about plaintiff's glucose results, even though it is a violation of HIPAA law, and informs them he will stop by the clinic to verify if in effect Mr. Rivera is able to work or not.

26. On October 18, 2014, Mr. Rivera visits the Human Resources Office to notify them of the aforementioned incident, and of his supervisor's violation of HIPAA law and of Mr. Rivera's right to privacy. The Human Resources Office tells Mr. Rivera that he has not provided proof of his medical condition and that it is necessary that he visit their clinic's doctor to determine how to proceed with his case. Mr. Rivera tells them he has a primary private doctor who takes care of his diabetes condition. Finally, the Human Resources office decides to schedule for Mr. Rivera an out of working hours appointment with their clinic's doctor.

27. On November 27, 2013, Mr. Rivera's supervisor, Mr. Jose Diaz Hernandez, together with the area supervisor, Mr. Josue Rivera, take him to a private office to question him about his visit to the dispensary clinic on November 22, 2013. During the meeting, Mr. Rivera told both

of his supervisors they were giving him contradictory instructions on how to handle his health condition, which was making him get confused and concerned. Then Mr. Rivera asked them to put in writing their instructions on how to handle an emergency in his case, so he can comply satisfactorily; they said it was not necessary to put it in writing.

28. On December 18, 2013, a second Memorandum was handed to Mr. Rivera from Mr. Juan Agosto and Mr. Josue Rivera, regarding his "behavior". Mr. Rivera replies that he is following company policies regarding his health condition, but that these policies and/or instructions are constantly changed for him and are not clear. Mr. Rivera then informs Mr. Agosto that he has noticed a strange behavior in his supervisor, Mr. Jose Diaz, specifically that he is seldom available in the work area due to his "escapes" with a "special female friend". This is one of the reasons he never knows on time the occasions Mr. Rivera has visited the clinic on an emergency. Besides, Mr. Rivera suspects his supervisor, Mr. Jose Diaz, has compromised related evidence related to environmental monitoring of a batch, risking its biological integrity.

29. The conversation makes Mr. Rivera sick; he starts to feel the symptoms of high blood glucose and pressure, headaches, blurred vision, and asks to be taken to the clinic. Mr. Josue Rivera takes him to the clinic, where he was treated as an emergency. His blood sugar level was 500ug/dL, blood pressure levels over 200/80mm/Hg. The company medical personnel called 911 and Mr. Rivera was taken by ambulance to a hospital.

30. On December 21, 2013, before starting the "slow down" period, Mr. Rivera requests by e-mail a copy of his personal records file to the Human Resources Offfice. He never received the same. During the "slow down" period, Mr. Rivera visited "Inspira" in Caguas to request psychological treatment, since this situation at work was affecting his personal life. He was diagnosed with Major Depression.

31. During January of 2014, Mr. Rivera returns to work, and requests an appointment with the Human Resources personnel to try to set new goals and monitor his health issues closely, with the assistance of his primary private doctor and the company's clinic doctor. The company's clinic personnel notified Mr. Rivera that he had an appointment with a specialist on April 10, 2014.

32. On February 27, 2014, a delicate situation occurred where personnel from Mr. Rivera's work area were possibly exposed to contaminated drinking water. Mr. Rivera informed his supervisor, Mr. Jose Diaz Hernandez, about this situation, but Mr. Diaz does not act accordingly. Mr. Rivera then proceeds to investigate further and calls the corresponding areas in charge.

33. On February 28, 2014, when Mr. Rivera arrives to his work shift, he is told that he should go with his supervisor to the office of the Area Manager, Mr. Juan Agosto. Mr. Rivera informed Mr. Jose Diaz that he made the appropriate calls to notify the company's personnel about the possibility of contaminated drinking water. Mr. Diaz replied to Mr. Rivera that this was neither his concern nor his business and asks him why he had to investigate. Mr. Rivera responds that his health as well as the health and well-being of his coworkers were at risk and it was important to take action and inform the maintenance personnel.

34. Later on, Mr. Jose Diaz Hernandez takes Mr. Rivera to Mr. Juan Agosto's office. Once there, they proceed to read his annual performance evaluation. Mr. Rivera disagrees with the same. At the end of the meeting Mr. Rivera was told that he was terminated and fired from Amgen. Ms. Yolanda Ortiz, from the Human Resources Office, comes in and hands Mr. Rivera a legal agreement for him to sign, stating that a financial incentive is offered in exchange of a hold harmless release for the company. Mr. Rivera was told he had five days to sign such

document, and was then escorted out of the premises. He was not allowed to get his personal belongings in his locker.

## DAMAGES

35. As a result of the actions and omissions described herein, plaintiff has suffered a concrete loss of income, estimated approximately to be $100,000.00 to date and expected to increase in the future, and loss of income and benefits in virtue of existent law and company policies.

36. Plaintiff experienced extreme stress on the job, as he dealt with the high pressure he was being subjected to by the defendant.

37. Plaintiff experienced humiliation for being wrongfully terminated. The job opportunities after his terminating have been drastically reduced, currently is not employee.

38. The wrongful and discriminatory termination have caused depression, anxiety as well as his self-esteem has been affected as he can no longer provide for his family as he previously could.

## FIRST CAUSE OF ACTION
## PROHIBITION OF DISCRIMINATION
## FEDERAL LAW

39. This cause of action is brought against AMGEN MANUFACTURING LTD

40. The allegations contained in all previous paragraphs are realleged as if fully alleged herein.

41. Disability discrimination occurs when an employer or other entity covered by the Americans with Disabilities Act, as amended, or the Rehabilitation Act, as amended, treats a qualified individual with a disability who is an employee or applicant unfavorably because she/he

has a disability. Harassment is a form of employment discrimination that violates Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, (ADEA), and the Americans with Disabilities Act of 1990, (ADA).

42. Plaintiff exhausted all applicable administrative remedies.

43. The violations of rights set forth herein entitle plaintiff to relief in the form of compensatory damages, punitive damages, costs, interests, litigation expenses and attorneys fees, as well as equitable relief in the form of back pay and related benefits thereon, and reinstatement or in the alternative, front pay and related benefits thereon.

44. Under the ADEA, plaintiff is also entitled to an additional equal amount corresponding to the above monetary items, as liquidated damages.

## **SECOND CAUSE OF ACTION**
## **PROHIBITION OF RETALIATION PURSUANT TO FEDERAL LAW**

45. This cause of action is brought against defendant AMDGEN

46. The allegations contained in all previous paragraphs are realleged as if fully alleged herein.

47. After the plaintiff complained of harassment against him, he was subject to further retaliatory actions, including but not limited to increasing workload and the removal of his molding assistant, all of which defendant conducted in furtherance of its intentional infliction of emotional distress to plaintiff.

48. The violations of rights set forth herein entitle plaintiff to relief in the form of compensatory damages, punitive damages, costs, interests, litigation expenses and attorneys fees, as well as equitable relief in the form of back pay and related benefits thereon, and reinstatement

or in the alternative, front pay and related benefits thereon, while he is herein claiming against defendant.

### THIRD CAUSE OF ACTION-
### PUERTO RICO LAW DISCRIMINATION CLAIMS

49. This cause of action is brought against AMGEN MANUFACTURING LTD

50. The allegations contained in all previous paragraphs are realleged as if fully alleged herein.

51. The actions of the defendant constitute a violation of the laws of Puerto Rico in particular, Law 100, which prohibits discrimination in employment on the basis of age, for which the plaintiff is entitled to back pay and related benefits and interest thereon, and compensatory damages, as well equitable relief in the form of back pay and related befits thereon, Law 80 29 L.P.R.A. 185, Law 115, December 20, 1991, Puerto Rico's Civil Code, 31.

52. Under the law of Puerto Rico, plaintiff is entitled to a doubling of the aforementioned amounts, and costs, interests and attorneys fees, from his unjust dismissal by defendant, his humiliation, damage to his reputation, dignity and honor.

### FOURTH CAUSE OF ACTION –TORT ACTION

53. This cause of action is brought against the defendant AMGEN MANUFACTURING LTD.

54. The allegations contained in all previous paragraphs are realleged as if fully alleged herein.

55. The actions and omissions of the defendants, through fault and/or negligence, cost damage to the plaintiff, in violation of the tort law of Puerto Rico and his right to dignity and preservation of his reputation, as well as his right to personal dignity and integrity as an employee. All of which violate Article II §§ 1,8 and 16 of The Constitution of the

Commonwealth of Puerto Rico, which violations are actionable pursuant to the provisions of Art. 1802 and Art. 1803 of the Civil Code of Puerto Rico, entitling plaintiff to compensatory damages caused as a result of those actions and omissions.

## V. RELIEF

**WHEREFORE**, the plaintiff prays that this court:

A. Enter a Declaratory Judgment that the acts complained of herein are in violation of the statutory prohibitions set forth above.

B. Award the plaintiff the following monetary amounts related to his claims sounding in tort and his discrimination claims:

C. Back pay and related benefits currently estimated to be in excess of $100,000.00 and expected to increase in the future.

D. Compensatory damages in excess of $500,000.00

E. A doubling of the above amounts, for a total of an additional amount in excess of $600,000.00, which amount is expected to increase in the future.

F. Punitive damages in an amount no less than $200,000.00.

G. Award the plaintiff whatever equitable relief is deemed appropriate.

H. Award plaintiff the cost of this action, as well as statutory attorneys' fees and litigation expenses.

I. Order payment of all applicable interests, including prejudgment interests.

J. Grant plaintiff such other and further relief as the Court may deem appropriate and proper and retain jurisdiction over this action in order to assure full compliance with any decree issued by this court.

**A jury by trial is hereby requested.**

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 26 day of May of 2015.

*S/ Nicolás Nogueras Cartagena*
USDC No.109712
**NOGUERAS LAW & ASSOCIATES**
PO Box 195386, San Juan, PR 00919-5386
Tel. (787) 296-1958 / Fax: (787) 772-4605
E-mail: *nnogueras@nogueraslaw.com*
